# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | |
| | ) | |
| vs. | ) | NO. 2:09-cr-43 |
| | ) | 2:13-cv-396 |
| | ) | |
| JUSTIN PHILLIP CEPHUS, | ) | |
| | ) | |
| Defendant/Petitioner. | ) | |

## OPINION AND ORDER

This matter is before the Court on the: (1) "Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody," filed by Petitioner, Justin Phillip Cephus, on November 5, 2013 (DE #494); (2) "Motion to Recuse Judge for Misconduct Motion to Vacate Order of Encumbrance Motion to Stay 2255-Extension to File," filed by Petitioner, Justin Phillip Cephus, on June 30, 2014 (DE #567); (3) "Motion For Judicial Intervention Jury Tampering - Obstruction of Justice," filed by Petitioner, Justin Phillip Cephus, on August 18, 2014 (DE #576 and in civil case no. 2:13-cv-396 DE #18); and (4) "Motion for Judicial Intervention Jury Tampering - Obstruction of Justice," filed by Petitioner, Justin Phillip Cephus, on September 8, 2014 (DE #580 and in civil case no. 2:13-cv-396 DE #19). For the reasons set forth below, the motion to recuse (DE #567), and motions for judicial intervention (DE #576 and DE #580) are **DENIED**. The section 2255 motion (DE #494) is also **DENIED**.

Cephus' request for an evidentiary hearing (DE #512, p. 11), is also **DENIED**.  Cephus' request for appointment of counsel (DE #569, p. 6) is **DENIED**.  The Clerk is **ORDERED** to **DISMISS** this civil action **WITH PREJUDICE**.  Additionally, the Court **DECLINES** to issue a certificate of appealability.  The Clerk is **FURTHER ORDERED** to distribute a copy of this order to Petitioner (Inmate Reg. No. 10106-27), Tucson USP, US Penitentiary, Inmate Mail/Parcels P.O. Box 24550, Tucson, Arizona 85734, or to such other more current address that may be on file for the Petitioner.

BACKGROUND

On July 2, 2009, Justin Cephus ("Cephus") was charged with four co-defendants in a superseding indictment (DE #35).  Cephus was charged with: Count 1 - conspiracy under 18 U.S.C. § 371 to commit various violations of 18 U.S.C. §§ 2, 1591(a)(1), (b)(2), 2421, and 2423(a); in Counts 4, 6, 8, 10, 12, 14, 16 and 18 - substantive violations of 18 U.S.C. § 1591(a)(1) and (b)(1) for his role in recruiting, enticing, harboring, transporting, providing, and obtaining victims A.C., A.H., A.W., B.G., C.V., J.O., L.G., and S.K., knowing that force, fraud, or coercion would be used to cause them to engage in commercial sex acts; in Counts 5, 7, 9, 11, 13, 15, 17, 19, 20, and 21, with substantive violations of 18 U.S.C. §§ 2, 2421, for his role in transporting victims A.C., A.H., A.W., B.G., C.V., J.O., L.G., S.K., A.B.3, and L.E. in interstate

commerce with intent that they engage in prostitution; and Counts 2 and 3 for violation of 18 U.S.C. §§ 2, 2423(a), and 2423(e), for his role in transporting minor victims A.B.1 and A.B.2 in interstate commerce with intent that they engage in prostitution. (DE #35.)

Following a ten-day jury trial, Cephus was found guilty of all charges against him. (DE #203.) At trial, Cephus was represented by attorney Visvaldis Kupsis. On December 6, 2010, this Court held a sentencing hearing for Cephus, and he was sentenced to: 60 months for Count 1; 120 months for each of Counts 5, 7, 9, 11, 13, 15, 17, 19, 20, and 21; and life imprisonment for each of Counts 2, 3, 4, 6, 8, 10, 12, 14, 16 and 18, all terms to be served concurrently. (DE #338.) Judgment was entered on December 8, 2010. (DE #344.)

Through appointed appellate counsel, Martin J. Vogelbaum, Cephus filed a direct appeal with the Seventh Circuit on December 9, 2010 (DE #340, 373). On appeal, Cephus raised the following arguments: (1) The Government's "incessant leading" of its witnesses amounted to credibility vouching, violating Defendant's rights to confrontation and due process; (2) this Court improperly excluded evidence of a victim's prior sexual behavior under Federal Rule of Evidence 412; (3) Defendant was unfairly prejudiced by the admission of evidence that he had beaten and hung to death a dog and by the use of his "mug shot" in a witness identification; (4) this Court erred by allowing a superseding indictment that was

duplicitous as to every count; and (5) Defendant's life sentence without parole violated the Eighth Amendment prohibition against cruel and unusual punishment. *See United States v. Cephus*, 684 F.3d 703 (7th Cir. 2012), *cert. denied*, 133 S. Ct. 588 (Nov. 5, 2012). The Seventh Circuit rejected all of Cephus' arguments.

In response to Cephus' arguments that the prosecution asked too many leading questions, the Seventh Circuit found some of those questions were leading and some were not, but regardless, "the leading questions in this case could not have affected the verdict of a reasonable jury, given the overwhelming evidence of the defendants' guilt." (*Id.* at 708.) Regarding the Rule 412 evidence Defendant sought to offer that the victim engaged in other sexual behavior, the Court found that "testimony sought to be elicited by the cross-examination would have been irrelevant." *Id.* Likewise, admission of evidence that Cephus beat and hung a dog was affirmed because it was "relevant to show a method by which Cephus coerced his recruits into obeying his illegal commands and was not unduly prejudicial in light of the extensive evidence that Cephus beat women who worked for him." (*Id.* at 709.) Similarly, the Court found no error in allowing a head and shoulders photograph of Cephus, which was never identified for the jury as a "mug shot," to be used for a witness identification. (*Id.* at 709.)

Regarding the allegedly "duplicitous" indictment, the Seventh Circuit found defendants waived the issue for not having brought it

up in district court and "[a]nyway none of the counts was likely to be thought duplicitous by the jurors." (*Id.* at 706.) Although Counts 2-21 incorporated by reference the allegations in Count 1, "[a] normal reader would understand each subsequent count's invocation of the first count to mean that the substantive offense alleged . . . in the subsequent count was one of the offenses the defendants had conspired to commit." *Id.* Finally, Cephus' contention that his life sentence violated the cruel and unusual punishment clause of the Eighth Amendment was rejected. (*Id.* at 709.) The United States Supreme Court denied Cephus' petition for writ of certiorari. *Cephus v. United States*, 133 S. Ct. 588 (Nov. 5, 2012).

Cephus filed the instant motion to vacate his sentence under section 2255 on November 5, 2013 (DE #494). He received an extension of time to file his memorandum in support, and filed the brief on January 13, 2014 (DE #512). The Government filed a response on June 11, 2014 (DE #564). Cephus then filed a reply on July 7, 2014 (DE #569).[1] As such, this motion is fully briefed, and ripe for adjudication.

In addition to the current section 2255 Petition, Cephus has filed additional related motions. On June 30, 2014, he filed a

---

[1] In his reply memorandum, Cephus also made the argument that a juror at trial knew him through a former girlfriend with whom he had "domestic squabbles" with, thus he was denied an impartial judge and jury. (DE #569, p. 2.)

"Motion to Recuse Judge for Misconduct" (DE #567); on August 18, 2014, he filed a "Motion for Judicial Intervention Jury Tampering - Obstruction of Justice" (DE #576); and on September 8, 2014, he filed another "Motion for Judicial Intervention Jury Tampering - Obstruction of Justice" (DE #580). These motions all relate to Cephus' claim that when he was reviewing his file, he discovered new information – that he actually knew a member of the jury (whom he allegedly did not recognize during trial), and that the juror knew his "former girlfriend that [he] had a 'violent domestic incident' with." (DE #576, pp. 2-3.) These motions have also been fully briefed and will be addressed and ruled upon in this order as well.

DISCUSSION

Habeas corpus relief under 28 U.S.C. section 2255 is reserved for "extraordinary situations." *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996). In order to proceed on a habeas corpus petition pursuant to 28 U.S.C. section 2255, a federal prisoner must show that the district court sentenced him in violation of the Constitution or laws of the United States, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. *Id.*

A section 2255 motion is neither a substitute for nor recapitulation of a direct appeal. *Id.; Belford v. United States*,

975 F.2d 310, 313 (7th Cir. 1992), *overruled on other grounds by*
*Castellanos v. United States*, 26 F.3d 717 (7th Cir. 1994).  As a
result:

> [T]here are three types of issues that a
> section 2255 motion cannot raise: (1) issues
> that were raised on direct appeal, absent a
> showing of changed circumstances; (2)
> nonconstitutional issues that could have been
> but were not raised on direct appeal; and (3)
> constitutional issues that were not raised on
> direct appeal, unless the section 2255
> petitioner demonstrates cause for the
> procedural default as well as actual prejudice
> from the failure to appeal.

*Belford*, 975 F.2d at 313.  Additionally, aside from demonstrating
"cause" and "prejudice" from the failure to raise constitutional
errors on direct appeal, a section 2255 petitioner may
alternatively pursue such errors after demonstrating that the
district court's refusal to consider the claims would lead to a
fundamental miscarriage of justice.  *McCleese v. United States*, 75
F.3d 1174, 1177 (7th Cir. 1996).

In assessing Petitioner's motion, the Court is mindful of the
well-settled principle that, when interpreting a pro se
petitioner's complaint or section 2255 motion, district courts have
a "special responsibility" to construe such pleadings liberally.
*Donald v. Cook Cnty. Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir.
1996); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (a "pro se
complaint, 'however inartfully pleaded' must be held to 'less
stringent standards than formal pleadings drafted by lawyers'")

7

(quoting *Haines v. Kerner*, 404 U.S. 519 (1972)); *Brown v. Roe*, 279 F.3d 742, 746 (9th Cir. 2002) ("pro se habeas petitioners are to be afforded 'the benefit of any doubt'") (quoting *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)).  In other words:

> The mandated liberal construction afforded to pro se pleadings "means that if the court can reasonably read the pleadings to state a valid claim on which the [petitioner] could prevail, it should do so despite the [petitioner's] failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements."

*Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999) (habeas petition from state court conviction) (alterations in original) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). On the other hand, "a district court should not 'assume the role of advocate for the pro se litigant' and may 'not rewrite a petition to include claims that were never presented.'"  *Id.*  Here, the Court assessed Cephus' claims with these guidelines in mind.

Section 2255 Petition

Cephus contends that his trial attorney provided constitutionally ineffective assistance of counsel.  Claims of ineffective assistance of counsel are governed by the 2-pronged test set forth in *Strickland v. Washington,* 466 U.S. 668 (1984). To prevail on an ineffective assistance of counsel claim, the Defendant must first show the specific acts or omissions of his

8

attorney "fell below an objective standard of reasonableness" and were "outside the wide range of professionally competent assistance." *Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993) (quoting *Strickland*, 466 U.S. at 690); *see also Hardamon v. United States*, 319 F.3d 943, 948 (7th Cir. 2003); *Anderson v. Sternes*, 243 F.3d 1049, 1057 (7th Cir. 2001). The second *Strickland* prong requires the Defendant to show prejudice, which entails showing by "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Regarding the deficient-performance prong, great deference is given to counsel's performance and the defendant has a heavy burden to overcome the strong presumption of effective performance. *Strickland*, 466 U.S. at 690; *Coleman v. United States*, 318 F.3d 754, 758 (7th Cir. 2003) (defendant "has a difficult burden of proof as he must overcome the strong presumption that his attorney's performance was effective."). Defendant must establish specific acts or omissions that fell below professional norms. *Strickland*, 466 U.S. at 690. If one prong is not satisfied, it is unnecessary to reach the merits of the second prong. *Id.* at 697.

The Seventh Circuit has held that, "[o]nly those habeas petitioners who can prove under *Strickland* that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ." *Rodriguez v. United States*, 286 F.3d

972, 983 (7th Cir. 2002) (quoting *Kimmelman v. Morrison*, 47 U.S. 365, 382 (1986)). Additionally, trial counsel "is entitled to a 'strong presumption' that his performance fell 'within the range of reasonable professional assistance' and will not be judged with the benefit of hindsight.'" *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007) (citing *Strickland*, 466 U.S. at 689). "Courts are admonished not to become 'Monday morning quaterback[s]' in evaluating counsel's performance." *Blake v. United States*, 723 F.3d 870, 879 (7th Cir. 2013) (quoting *Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990)).

Alleged Duplicitous Indictment

First, Cephus argues that "[t]rial counsel allowed the petitioner to be tried on a Duplicitous Indictment, where he never objected to and because of such the claim being waived." (DE #512, p. 4.) It is true that the Seventh Circuit deemed the argument waived on appeal, but the Court still addressed it, and found that:

> [N]one of the counts was likely to be thought duplicitous by the jurors. The first alleged the conspiracy and described as acts in furtherance of it the acts charged as substantive violations in the 20 subsequent counts. Each of those counts first 'incorporate by reference' the allegations in the first count and then alleged a substantive violation of the federal criminal code. Only if read literally would each count be alleging two offenses: conspiracy and a substantive offense. No reasonable person would read them literally. None of them mentions conspiracy. A normal reader would understand each subsequent count's invocation of the first count to mean that the substantive offense alleged (identified in the count by the section of the federal criminal code that created

10

the offense) in the subsequent count was one of the offenses the defendants had conspired to commit. The jury was instructed that a 'verdict of guilty or not guilty of an offense charged in one count should not control your decision as to that defendant in any other count.' A reasonable juror would not understand this to mean that having decided that the defendants were guilty of count one he would have to decide they were guilty of the other 20 counts as well because each of those counts mentioned the charge of conspiracy. So much for duplicity.

*Cephus*, 684 F.3d at 706.

As such, Cephus has not satisfied either prong of the *Strickland* test - he cannot show that trial counsel provided ineffective assistance by failing to object to the indictment language, and he cannot establish that the outcome would have been different had the objection been made.

Alleged Multiplicitous Indictment

Next, Cephus argues that trial counsel provided ineffective assistance by not arguing that the superseding indictment was multiplicitous, which he claims resulted in a double jeopardy violation. (DE #512, p. 6.) The Seventh Circuit explained multiplicitous indictments in *United States v. Starks*, 472 F.3d 466 (7th Cir. 2006):

Multiplicity is the charging of a single offense in separate counts of an indictment. Multiplicity in an indictment exposes a defendant to the threat of receiving multiple punishments for the same offense in violation of the Double Jeopardy Clause of the Fifth Amendment. The traditional test of multiplicity determines whether each count requires

11

> proof of a fact which the other does not. If one
> element is required to prove the offense in one
> count which is not required to prove the offense in
> the second count, there is no multiplicity.

*Id.* at 468-69 (internal quotations and citations omitted). "The cardinal rule for reading multi-count indictments is that each count must stand on its own two feet; each count is regarded as if it was a separate indictment." *United States v. Conley*, 291 F.3d 464, 471 (7th Cir. 2002) (internal quotations and citations omitted).

In this case, Cephus does not identify which counts of the superseding indictment are allegedly multiplicitous. The Court has reviewed the superseding indictment, and it is proper. Counts 4, 6, 8, 10, 12, 14, 16, and 18 all charge Cephus with violating 18 U.S.C. §§ 2 and 1591(a)(1) and (b)(2); however, each count makes the allegation as to a different individual who is specifically identified in each count as the victim. The same is true of the other counts (Counts 2 and 3 allege violations of 18 U.S.C. §§ 2 and 2423(a) and (e) and Counts 5, 7, 9, 11, 13, 15, 17, 19, 20, and 21, allege violations of 18 U.S.C. §§ 2 and 2421), which allege violations of statutory provisions as to specific victims. No two counts in the superseding indictment charge Cephus with committing the exact same criminal offense against the same victim. "The Double Jeopardy Clause is not implicated when multiple separate violations of the same provision are charged in multiple counts." *United States v. Snyder*, 189 F.3d 640, 647 (7th Cir. 1999).

While Cephus suggests the allegations were all part of the same general "crime spree," (DE #512, p. 10), and that the charges should have been brought in a single count, Count 1 does allege a conspiracy under 18 U.S.C. § 371, and the other counts violations of 18 U.S.C. §§ 1591, 2421, and 2423(a).  The Court finds there was nothing at all improper about the Government alleging both a conspiracy under section 371 and the substantive violations that were the overt acts of that conspiracy.  Indeed, the commission of a substantive offense and conspiring to commit that offense are two separate crimes.  As the Seventh Circuit explained:

> A complete answer to defendant's averment of double jeopardy is found in *Pinkerton v. United States*, 328 U.S. 640 (1946), in which the Supreme Court held that conspiracy to commit a substantive offense and the actual commission of such offense are separate and distinct offenses, and that a plea of double jeopardy is of no avail.  We need not repeat what the Court there said, except to quote from its opinion, 328 U.S. at 644: 'Moreover, it is not material that overt acts charged in the conspiracy counts were also charged and proved as substantive offenses. . . If the overt act be the offense which was the object of the conspiracy, and is also punished, there is not a double punishment of it.  The agreement to do an unlawful act is even then distinct from the doing of the act.'

*Bocock v. United States*, 216 F.2d 465, 466 (7th Cir. 1954).  The Court finds that Cephus has failed to establish that the superseding indictment was multiplicitous or that Cephus' trial counsel provided constitutionally ineffective assistance of counsel for failing to raise such a claim with this Court.

13

<u>Failure To Move For Severance</u>

Cephus next argues that his counsel was ineffective because he failed to move for a severance from his co-defendants.  The Seventh Circuit has stated there is a "strong public interest" in having persons "jointly indicted tried together." *United States v. Neely*, 980 F.2d 1074, 1090 (7th Cir. 1992) (quoting *United States v. Percival*, 756 F.2d 600, 610 (7th Cir. 1985)).  That is especially true in cases where multiple defendants are charged with engaging in a common enterprise.  *See United States v. Buljubasic*, 808 F.2d 1260, 1263 (7th Cir. 1987) ("[t]here is a strong interest in joint trials for those who engaged in a common enterprise.").  Joint trials are economical for the courts and prosecutors, reduce the stress on witnesses, and "give[] the jury the best perspective on all of the evidence and therefore increase[] the likelihood of a correct outcome." *Id.*  Cephus has not shown that if he made this motion, it likely would have been granted and would have changed the outcome of the trial.  *See, e.g., United States v. Jackson*, 33 F.3d 866, 875-76 (7th Cir. 1994) (denying claim of ineffective assistance of counsel where counsel failed to make a severance motion, reasoning it could have been a tactical decision, and that in any event, "we think it highly unlikely that a motion for severance would have been granted.").  Moreover, as in *Jackson*, the Court notes that this Court did admonish the jury that it was obligated to separately consider each defendant.  (DE #214, p. 20.)

Thus, the Court cannot say that failure to seek a severance resulted in a different result of the proceedings.

To the extent that Cephus points to specific testimony that he believes the jury should not have heard, and was highly prejudicial to him, his argument still fails. (DE #512, p. 7.) Cephus points out that his co-defendant brother, Stanton Cephus, testified that "he had just helped out his brother from time to time motivated by family loyalty, and [] he watched his brother beat prostitutes and he would drive them to meet their calls." (*Id.*) In *Bruton v. United States*, 391 U.S. 123 (1968), the Court held "that introducing a nontestifying codefendant's out-of-court confession violates the Confrontation Clause if the confession directly incriminates the defendant on trial." *Thomas v. United States*, 530 Fed. Appx. 584, 586 (7th Cir. 2013) (citing *Bruton*, 391 U.S. at 127-28). However, "It is clear that a redacted confession of a nontestifying co-defendant may be admitted as long as the redaction does not 'obviously' refer to the defendant." *United States v. Green*, 648 F.3d 569, 575 (7th Cir. 2011).

In this case, Stanton Cephus' confession (Justin Cephus' brother) was redacted to remove reference to Justin Cephus or his "brother." The redacted statement was read aloud to the jury but not admitted into evidence and reads as follows ("Cephus" refers to the declarant, Stanton Cephus):

> Cephus stated that females are constantly staying at the house. Cephus stated that he was doing a

favor tonight when a person called him and asked him to bring some girls to a call. Cephus stated that he has driven girls in the past, however, it isn't something he normally does. Cephus has never been paid to drive girls around. Cephus stated that this other person has been running an escort business for some time. A girl named Loh, known to law enforcement as S.K., started in the escort business with this other person and then left him. Cephus stated that this other person runs the business now along with that Ashley girl, known to law enforcement as C.V. Ashley took Loh's spot. This other person used to beat Loh up real bad and he used to do it a lot. Cephus stated that he feels like he cannot turn on this other person, but he knows what he is doing is wrong. Cephus stated that at times he feels obligated to give the girls rides when this other person calls him, but he knows he shouldn't. Cephus stated that his girlfriend, N.C., who resides in Gary, Indiana, gets really upset when he even goes over to this other person's house. Cephus stated that he doesn't know how he is involved in this now, and this is bullshit. What this other person does is wrong. He beats up women. Cephus admitted that this other person is a pimp. Cephus identified cellular telephone number . . . and . . . . Cephus also identified the following additional telephone numbers: . . . .

(DE #564-1, Govt. Ex. A, Tr. Tran. Vol. VIII, pp. 1886-888.)

Additionally, this Court gave Jury Instruction No. 10 to the jury:

> You have received evidence of statements said to be made by defendants. You must decide whether the defendants did in fact make the statements. If you find that the defendants did make the statements, then you must decide what weight, if any, you feel the statements deserve. In making this decision, you should consider all matters in evidence having to do with the statements, including those concerning the defendants and the circumstances under which the statements were made. You may not consider this statement as evidence against any defendant other than the one who made it.

(DE #214, p. 11.) In this case, the altered statement did not incriminate the nontestifying defendant, Justin Cephus, by itself, and the Court does not believe there was any *Bruton* violation. *See United States v. Strickland*, 935 F.2d 822, 826 (7th Cir. 1991) (finding "the replacement of [co-defendants'] names with references such as 'another person,' combined with an instruction to consider the confession against only the declarant, satisfies *Bruton.*"); *United States v. Gio*, 7 F.3d 1279, 1287 (7th Cir. 1993) (finding district court did not err in allowing into evidence redacted statement combined with a limiting instruction to the jury).

### Appellate Counsel

Cephus also contends in his section 2255 Petition that he received ineffective assistance of appellate counsel because his appellate counsel failed to raise each of the above referenced arguments in the direct appeal. (DE #494, pp. 7-8, 10.) However, the Seventh Circuit has explained that ineffective assistance of counsel claims should not be raised on direct appeal, but rather in petitions under 28 U.S.C. § 2255. *See United States v. Wilson*, 240 Fed. Appx. 139, 143 (7th Cir. 2007) (quoting *Massaro v. United States*, 538 U.S. 500 (2003), explaining "it is better to present an ineffective-assistance claim on collateral review, when the district court can develop 'the facts necessary to determining the adequacy of representation during an entire trial' . . . than on

direct appeal, when 'appellate counsel and the court must proceed on a trial record not developed precisely for the object of litigating or preserving the claim . . .").  For this reason, plus the additional reasoning set forth in this Order ruling that the ineffective assistance of trial counsel arguments made by Cephus lack merit, appellate counsel was not ineffective for not raising them on direct appeal.


Motions Regarding "Jury Tampering"

Cephus first raised this issue in a Motion entitled "Motion to Recuse Judge for Misconduct Motion to Vacate Order of Encumbrance," filed on June 30, 2014  (DE #567, p. 1).  In that motion, Cephus claims the following:

> Recently the Defendant learned of newly discovered information concerning judicial misconduct of Judge Lozano pertaining, but not limited to, a juror that was a personal acquaintance of a girlfriend of the defendant who was involved in a domestic dispute with the defendant, that Judge Lozano allowed to sit on the jury and is now covering.

(DE #567, p. 2.)  He requests that this Judge recuse himself, stay the pending section 2255 motion, and grant an extension.  (*Id.*, p. 3.)  The Court took the matter under advisement and ordered the Government to file a response.  (DE #579.)

Then, in his reply brief in support of his section 2255, filed on July 7, 2014, Cephus argued:

> This case resolves [sic.] around the simple undisputed fact that a group of women, chose to

> voluntarily become involved in prostitution and to
> seek out numerous men to provide them assistance
> for their chosen profession, that once caught
> claimed they were "victims", that the court and its
> minions all allowed a 'domestic squabble' to be
> incorporated into the criminal case, one should not
> be surprised when the matter is covered up to all
> extremes by those same individuals.

(DE #569, pp. 5-6.)

Next, Cephus filed a "Motion for Judicial Intervention Jury Tampering- Obstruction of Justice," on August 18, 2014 (DE #576). In it, he listed an "affidavit in support" which was not a sworn or signed statement, which reads as follows:

> I was recently in a meeting with my A1 team case
> manager county and discovered after a review of my
> records of the following type of information that I
> did not know; Melissa Wilson was a member of my
> jury. I did not recognize her as someone that I
> knew at the time of jury selection. She worked at
> "the Peoples Bank", Route 30 in Sherville-
> Merriville [sic.]. She knew me through a former
> girlfriend that I had a violent 'domestic incident'
> with. My girlfriends name was "Liz". On several
> occasions, I went to the "Peoples Bank" where both
> "Liz" and "Melissa" worked and "Melissa" refused to
> cash my checks and forced me to leave the bank.
> She stated that I was not "welcome there" due to
> the domestic disputes with "Liz". She swore she
> "would get even."

(DE #576, pp. 2-3.) This motion was taken under advisement as well and the Government was ordered to respond. (DE #579.)

Then, Cephus filed another "Motion for Judicial Intervention Jury Tampering-Obstruction of Justice," on September 8, 2014 (DE #580). He asks for the FBI to conduct an investigation. In the motion, he lists another "affidavit in support," which again is not

a signed or sworn statement, which reads in pertinent part as follows:

> In the pre sentence investigation report, their [sic.] is a referance [sic.] to the defendants arrest for possession of marijuana in Ocono County, Wisconsin. "Liz" - Melissa in fact posted "bond" in that case. This is evidence of the "association" in the prior motion and withheld by the juror in question, before this Court. A record of this bond being posted exists within the county records. The defendant will obtain that record and provide it to the Court.

(DE #580, p. 2.)[2] This Court took this motion under advisement as well, and ordered the Government to file a response brief. (DE #581.)

The Government filed a response to these motions on September 30, 2014 (DE #585). Cephus then filed a reply on October 27, 2014 (DE #592). He continued to file duplicative motions after that. The Court entered a final order on October 29, 2014, allowing in an abundance of caution Cephus' memorandum entitled "Motion for Schedule Order Permission to File," which included arguments in support of his section 2255 motion and continued arguments about the alleged tainted juror (DE #597), and notifying the parties that the voluminous briefing on the section 2255 petition and the associated motions to recuse and for jury tampering was complete. (DE #598).

Motion to Recuse

---

[2] No such record of the alleged bond posting was ever provided to this Court.

28 U.S.C. section 144 provides that whenever a party files a "timely and sufficient affidavit" that the judge of the party's case has a "personal bias or prejudice," the case shall be assigned to a different judge. 28 U.S.C. § 144. The bias must be personal rather than judicial, and "the facts averred must be sufficiently definite and particular to convince a reasonable person that bias exists; simple conclusions, opinions, or rumors are insufficient." *United States v. Sykes*, 7 F.3d 1331, 1339 (7th Cir. 1993) (citation omitted). The affidavit must show a personal bias "and that it stems from an extrajudicial source- some source other than what the judge has learned through participation in the case." *United States v. Balistrieri*, 779 F.2d 1191, 1199 (7th Cir. 1985) (citation omitted). "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality recusal motion." *Liteky v. United States*, 510 U.S. 540, 541 (1994).

Cephus has not met the statutory requirements. First, Cephus did not file a proper affidavit - it was neither sworn nor signed. Second, Cephus has not shown that any alleged personal bias stems from an extrajudicial source. Regarding Cephus' assertion that this Court should have excused a juror who Cephus claims was an acquaintance of his, Cephus has provided no evidence whatsoever that this Court knew this alleged information (and indeed, it did not). To the extent Cephus complains about some of this Court's rulings, that does not, in itself, constitute a reason to recuse.

Adverse judicial rulings alone do not establish the type of impermissible bias that would warrant recusal. *See* 28 U.S.C. § 455; *Liteky*, 510 U.S. at 555. Therefore, the Motion to Recuse (DE #567) is **DENIED**.


Motions For Jury Tampering - Obstruction of Justice

Cephus claims that when reading through the trial transcript, he discovered that he knew a member of the jury, Melissa Wilson, who worked at the Peoples Bank, and was friends with his former girlfriend "Liz," whom he had a "domestic squabble" with. (DE #597, p. 597, p. 2; DE #580, p. 2.) He also claims Melissa Wilson hated him, and swore she would "get even" with him (DE #576, pp. 3-4). Cephus also suggests that there was prosecutorial misconduct because of this incident, and hints that Ms. Wilson inflamed the jury and "manipulate[ed] the system in conspiracy-conjection with the prosecutor." (DE #569, p. 4.)

A woman by the name of Melissa Wilson was on the jury (a fact anyone can read in the transcript). During jury selection in this case, the prospective jurors were read the defendants' names (Tr. Trans. Vol. I, DE #306, p. 26), and were introduced individually to each defendant by their counsel (*id.*, p. 29). The jurors were then asked: "Ladies and Gentlemen, earlier today I had the attorneys introduce themselves and introduce their clients. First of all, do any of you know any of the defendants in this case? Ever have any

contact with them? Meet with them?  Socialize with them?  Any contact of any kind?" and Ms. Wilson remained silent. (*Id.*, p. 57.)  This Court asked potential juror, Melissa Wilson, if she was currently employed and she replied no, but she was last employed as "a teller at People's Bank in Dyer, Indiana.  Bank teller." (DE #306, pp. 94-95.)  Later during questioning, Ms. Wilson disclosed that someone she knew had been murdered but in response to questioning by this Court, she said she would be able to "wipe that incident out of [her] mind for purposes of this trial and decide this case only on the evidence introduced during [the] trial and the law." (*Id.*, p. 110.)  Ms. Wilson was specifically asked by this Court: "As you sit here today, do you feel you can be fair and impartial both as to the government and as to the defendants?" and she responded, "[y]es, sir." (*Id.*, p. 111.)  Additionally, this Court asked the jurors whether there was "any reason whatsoever, whether I have asked you about it or not, which would in any way, even in the slightest degree, prevent you from giving both the government and the defendant in this case a completely fair and impartial trial?" and no juror responded. (*Id.*, p. 128.)  Finally, at the close of evidence, this Court instructed the jury that "anything that you may have seen or heard outside the courtroom is not evidence and must be entirely disregarded." (DE #214, p. 8 (Court's Instruction No. 7.)).

Although Cephus' multiple motions are muddled procedurally,

the Court interprets them as requesting a new trial under Federal Rule of Criminal Procedure Rule 33 based upon alleged juror bias. A trial court has wide discretion when deciding such a motion. *See, e.g., United States v. Jones*, 707 F.2d 1169, 1173 (10th Cir. 1983). Additionally, the trial judge's response to such a motion "must be guided by the content of the allegations, including the seriousness and likelihood of the alleged bias, and the credibility of the source." *United States v. Perez*, 841 F.Supp. 250, 253 (N.D. Ind. 1993) (citing *United States v. Jones*, 707 F.2d 1169, 1173 (10th Cir. 1983)). The *Perez* Court went on stating the appropriate standards:

> Something more than an unverified conjecture is necessary to justify the grant of a new trial where only potentially suspicious circumstances are shown. Furthermore, post-verdict orders for new trials based upon unproven juror bias should be granted only where the probability of juror bias is so great that in fairness it cannot be ignored. Finally, even where juror bias has been shown, not every incident requires a new trial. The court must determine if the bias or prejudice amounted to a deprivation of Fifth Amendment (due process) or Sixth Amendment (impartial jury) guarantees. The test is whether or not the misconduct has prejudiced the defendant to the extent that he has not received a fair trial.

*Perez*, 841 F. Supp. at 253 (citations and quotations omitted).

First is the issue of waiver. Cephus was present during jury selection and during the trial. He heard the juror's name repeatedly, and had the opportunity over days (it was a 10 day jury trial) to recognize the juror. It is undisputed that neither he

nor his attorney ever made any comments to the Court about this juror or voiced any concerns whatsoever. If what Cephus alleges is true - that Melissa Wilson was friends with his former girlfriend, "on several occasions" at the bank refused to cash Cephus' check because of a violent domestic dispute between Cephus and his girlfriend and promised revenge (DE #567, p. 3), and that Ms. Wilson also posted bond for Cephus for a previous drug charge (DE #580, p. 2), then the Court is at a loss as to how Cephus could not recognize her at trial (but then allegedly recognized her name in a written transcript almost 5 years after the jury trial). By not bringing his alleged knowledge of this possible juror bias to the attention of this Court before the verdict, the Court believes Cephus has waived his right to a new trial. *See, e.g., United States v. Delatorre,* 572 F.Supp.2d 967, 987 (N.D. Ill. 2008) ("A defendant waives a claim of juror misconduct if he had the information underlying the claim prior to the verdict and failed to raise it with the Court."); *United States v. Bolinger*, 837 F.2d 436, 438-39 (11th Cir. 1988); *United States v. Dean*, 667 F.2d 729, 730 (8th Cir. 1982); *United States v. Jones*, 597 F.2d 485, 488 n.3 (5th Cir. 1979).

Even if this claim of juror misconduct was not waived, Cephus still cannot prevail. To justify a new trial based on newly discovered evidence, he must satisfy the following test:

> He must show that the evidence: (1) came to his knowledge only after trial; (2) could not have been

> discovered sooner through the exercise of due
> diligence; (3) is material, and not merely
> impeaching or cumulative; and (4) would probably
> lead to an acquittal in the event of a new trial.

*United States v. Gootee*, 34 F.3d 475, 479 (7th Cir. 1994). Here, the Court does not believe Cephus satisfies the first prong of the test, because he observed the juror during trial and heard her name during jury selection – at the time the trial began, he had all the necessary information (he just claims he didn't recognize the juror at the time). *See, e.g., United States v. Ellison*, 557 F.2d 128, 133 (7th Cir. 1977) (concluding the "facts alleged in support of a motion for a new trial were within the defendant's knowledge at the time of trial" and thus not "newly discovered"). Regarding whether this information is material, the Court turns back to *Perez* which encourages the trial judge to review the content of the allegations, including the seriousness and likelihood of the allegations, and the credibility of the source. *Perez*, 841 F.Supp. at 253. Here, the Court is very doubtful of Cephus' credibility. His claims are unsigned and unsworn, not supported by anything external to the transcript, and Cephus continues to proclaim his innocence[3] (DE #569, p. 5) and criticize the prosecutor and this judge despite the overwhelming evidence presented at trial of his guilt. Moreover, the juror claim is unfounded and incredible. Finally, even assuming, *arguendo*, that a new trial was to be

---

[3] For example, Cephus argues the "alleged victims 'gamed' the system financially." (DE #569, p. 6.)

granted, the Court does not believe a different jury would lead to an acquittal given the large quantity of evidence presented and the graphic and compelling testimony at trial in this case. As the Seventh Circuit found on appeal, the facts were "incontestable" and there was "overwhelming evidence of the defendants' guilt." *Cephus*, 684 F.3d at 705, 708. And finally, as pointed out by the Government, a motion for a new trial based upon "newly discovered evidence" must be filed within 3 years of the verdict, and Cephus has missed that deadline. *See* Fed. R. Crim. P. 33(b)(1). As such, the Court denies Cephus' request for a new trial based upon juror misconduct.

## Evidentiary Hearing

Cephus requests an evidentiary hearing on his section 2255 (DE #512, p. 11), as well as an investigation and hearing on the alleged juror misconduct issue. Regarding the juror, the Seventh Circuit has ruled that due process "requires a post-trial hearing when there has been extraneous contacts that may have affected the jury's ability to be fair, but that no post-trial hearing is required when the issue is preexisting juror bias." *Perez*, 841 F. Supp. at 253 (citing, *inter alia, Artis v. Hitachi Zosen Clearing, Inc.*, 967 F.2d 1132 (7th Cir. 1992)). This Court concurs with the following analysis in *United States v. Piccarreto*, 718 F.Supp. 1088, 1091 (W.D.N.Y. 1989) (citations omitted):

> Courts should be reluctant to haul jurors in after
> they have rendered a verdict and probe for
> potential instances of bias, misconduct or
> extraneous influences. These unnecessary post-
> verdict inquiries may lead to evil consequences:
> subjecting juries to harassment, inhibiting jury
> room deliberation, burdening courts with meritless
> applications, increasing temptations for jury
> tampering and creating uncertainty in jury
> verdicts.

In sum, this Court has exercised its discretion and not ordered a post-trial hearing.

With regard to the requested hearing on the section 2255 generally, an evidentiary hearing need not be held for every section 2255 motion. *Liss v. United States*, 915 F.2d 287, 290 (7th Cir. 1990). "No hearing is required in a section 2255 proceeding if the motion raises no cognizable claim, if the allegations in the motion are unreasonably vague, conclusory, or incredible, or if the factual matters raised by the motion may be resolved on the record before the district court." *Oliver v. United States*, 961 F.2d 1339, 1343 n.5 (7th Cir. 1992) (citation omitted).

Cephus has failed to offer the Court any objective facts outside the trial record that would warrant an evidentiary hearing. Moreover, the Court has concluded that the record and history of this case demonstrate that Cephus is not entitled to relief. Therefore, an evidentiary hearing is not warranted. *See Cooper v. United States*, 378 F.3d 638, 641-42 (7th Cir. 2004) (holding district court did not abuse its discretion in denying evidentiary

hearing where defendant was not entitled to 2255 relief, and given lack of additional evidence from defendant).

Appointment of Counsel

Although Cephus has not filed a separate motion requesting counsel, he does ask for "appointment of counsel in his reply memorandum. (DE #569, p. 6.) The Seventh Circuit has left the appointment of counsel in section 2255 cases to the sound discretion of the lower courts, and there is no right to counsel in section 2255 cases "unless denial would result in fundamental fairness impinging on due process rights." *Winsett v. Washington*, 130 F.3d 269, 281 (7th Cir. 1997) (quoting *LaClair v. United States*, 374 F.2d 486, 489 (7th Cir. 1967)).

Upon review of the documents filed since the inception of this case, there is no indication that Cephus' due process right will be impinged upon should he continue to represent himself. In the instant 2255 Petition and the other briefs before this Court, it is clear that Cephus is fully capable of articulating his arguments and presenting his case without counsel. He cites to case law and sets forth coherent legal arguments. Therefore, this Court finds that denying Cephus' request for counsel will not impinge on his due process rights, and the request is **DENIED**.

Certificate of Appealability

Pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings, a district court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may issue only if the applicant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a defendant must show that "reasonable jurists could debate whether (or, for that matter, agree that) the motion should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 475 (U.S. 2000) (internal quotation marks and citation omitted).

For the reasons set forth above, Cephus has not stated any grounds for relief under section 2255. The Court finds no basis for a determination that reasonable jurists would find this decision debatable or incorrect or that the issues deserve encouragement to proceed further. Therefore, a certificate of appealability will not be issued.

CONCLUSION

For the reasons set forth below, the motion to recuse (DE #567), and motions for judicial intervention (DE #576 and DE #580) are **DENIED.** The section 2255 motion (DE #494) is also **DENIED.** Cephus' request for an evidentiary hearing (DE #512, p. 11), is

also **DENIED**. Cephus' request for counsel (DE #569, p. 6), is **DENIED**. The Clerk is **ORDERED** to **DISMISS** this civil action **WITH PREJUDICE**. Additionally, the Court **DECLINES** to issue a certificate of appealability. The Clerk is **FURTHER ORDERED** to distribute a copy of this order to Petitioner (Inmate Reg. No. 10106-27), Tucson USP, US Penitentiary, Inmate Mail/Parcels P.O. Box 24550, Tucson, Arizona 85734, or to such other more current address that may be on file for the Petitioner.


**DATED: February 4, 2015**          /s/ RUDY LOZANO, Judge
                                     **United States District Court**